IN THE UNITED STATES DISTRICT COURT
OF SOUTH CAROLINA
CHARLESTON DIVISION

_____
JOSE LUIS MORALES-PEREZ and       :
ANGEL de JESUS LOPEZ RUSSELL      :
                                  :
                                  :
        *Plaintiffs*,              :
                                  :    Civil Action No.: 2:15-cv-948-PMD
                                  :
vs.                               :
                                  :
STONE FORESTRY SERVICES, INC.,    :
JUAN CAMPOS, AND RANDY STONE      :
                                  :
        *Defendants*.              :
_____:

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. Plaintiffs are a migrant agricultural workers recruited by Defendant in Mexico in 2012 to perform reforestation tasks in South Carolina, Georgia, Kentucky, West Virginia, Alabama or Florida under a H-2B guestworker visa. Plaintiffs file this action to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA), 29 U.S.C. §§201 *et seq*., the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§1801 *et seq*., the South Carolina Payment of Wages Act, S.C. Code §§41-10-10 to -50 (1976 & Supp. 2009), and the common law of contracts.

2. Defendants violated the FLSA by failing to pay Plaintiffs at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse pre-employment expenses as required by law, and by

1

failing to pay Plaintiffs at least one and one-half times the regular rate of compensation for every compensable hour of labor performed in a workweek in excess of 40 hours.

3. In the course of its employment of the Plaintiffs, Defendants also violated the AWPA's recordkeeping, wage statement, wage payment and working arrangement provisions. Among other things, Defendants failed to pay Plaintiffs the required prevailing wage for their work and attempted to conceal these underpayments by not accurately reporting Plaintiffs' hours of work on the company's payroll records and the wage statements it issued to Plaintiffs with their weekly wages.

4. Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, and compensatory damages, statutory damages, and pre- and post-judgment interest.

## I. JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to:

    28 U.S.C. §1331 (Federal Question);

    29 U.S.C. §1337 (Interstate Commerce);

    29 U.S.C. §216(b) (FLSA);

    29 U.S.C. §1854(a) (AWPA).

6. Venue is proper in this district pursuant to 29 U.S.C. §1854 and 28 U.S.C. §1391 because a substantial part of the events giving rise to these claims occurred in South Carolina and because the Defendants Randy Stone ("Stone") and Juan Campos ("Campos") do business in South Carolina relating to the events alleged.  Defendant Stone Forestry Services, Inc. has an office located in South Carolina.

7. This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## II. PARTIES

8. Plaintiffs were admitted into the United States under the auspices of the H-2B program, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(B), 1184(c)(1), and 20 C.F.R. § 655.1 *et seq*. (2012).

9. Plaintiffs were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A) because they were employed in seasonable agricultural employment, the hand-planting of pine seedlings, while required to be absent overnight from their permanent place of residence in Mexico.

10. Plaintiffs are citizens of Mexico, where they maintain permanent homes.

11. The Plaintiffs were recruited in Mexico to work for Defendants in and near Round O, South Carolina as a reforestation worker, and traveled from Mexico to the United States in order to do so. During their employment with Defendants, Plaintiffs also worked in Georgia, Kentucky, West Virginia, Alabama, and Florida.

12. Plaintiffs were recruited in Mexico by Defendants' agent, a woman named Cristina. Plaintiffs paid Cristina 500 Mexican pesos each (approximately $34 USD) to initiate the employment process.

13. Defendant Stone Forestry Services, Inc. ("Stone Forestry") is a Georgia corporation with its principal office at P.O. Box 1041 Trenton, GA 30752. Defendant Stone Forestry has an office and worksite located at 283 Turner Lane, Round O, SC 29474.

14. At all times relevant to this complaint, Stone Forestry was registered as a farm labor contractor with the United States Department of Labor ("U.S. DOL").

15. At all times relevant to this action, Defendant Stone Forestry was registered and acted as a farm labor contractor, as defined by 29 U.S.C. §1802(7), because it recruited, hired, transported, or employed migrant agricultural workers to engage in reforestation activities for valuable consideration.

16. Defendant Stone Forestry was the Plaintiffs' employer because it had the right to hire and terminate Plaintiffs, suffered or permitted Plaintiffs to work, supervised Plaintiffs' work, and established the piece-rate scheme under which Plaintiffs were paid.

17. Defendant Randy Stone is an executive of Stone Forestry, and can be served at 2011 Plum Nelly Road, Rising Fawn, Georgia 30738. At all times relevant to this complaint, Defendant Stone managed Stone Forestry with operational control and decision making authority over Stone Forestry's compliance with federal employment laws and regulations, including signing Defendant Stone Forestry's farm labor contractor registration application.

18. Defendant Randy Stone was the Plaintiffs' employer because he exercised control over Plaintiffs' work by advertising the job opportunity to Plaintiffs, submitting the applications for temporary labor certification to the U.S. DOL and attesting that the job opportunity offered certain conditions relating to wages and compliance with employment-related laws and regulations, and arranging and paying for Plaintiffs' transportation to the U.S. Defendant Randy Stone further exercised his employer status by setting Plaintiffs' wage rate, and, on information and belief, supervising Plaintiffs' payroll out of his Turner Lane office. Defendant Randy Stone further exercised his employer status by procuring worker's compensation insurance as an employer of the Plaintiffs, supervising Plaintiffs on site visits to Plaintiffs' worksites, and employing

4

crewleaders to act as additional supervisors for Plaintiffs during their employment of harvesting, processing, and packing pine straw.

19. At all times relevant to this action, Defendant Randy Stone acted as a farm labor contractor, as defined by 29 U.S.C. §1802(7), because he recruited, hired, transported, or employed migrant agricultural workers to engage in the harvesting, processing, and packing of an agricultural or horticultural commodity for valuable consideration. Among other things, Defendant Randy Stone recruited Plaintiffs by advertising the job opportunity to Plaintiffs and submitting the application for temporary labor certification to the U.S. DOL. Defendant Stone arranged for Plaintiffs' transportation to the U.S. Defendant Randy Stone employed Plaintiffs to engage in the harvesting, processing, and packing of pine straw.

20. Defendant Randy Stone hired Defendant Juan Campos to act as supervisor over Plaintiffs and other H-2B workers. Defendant Campos was in charge of organizing and assigning work groups on behalf of Defendants Stone and Stone Forestry. At all times relevant to this action, Defendant Campos acted as a farm labor contractor, as defined by 29 U.S.C. §1802(7), because he recruited, hired, furnished or transported migrant agricultural workers to engage in the harvesting, processing, and packing of an agricultural or horticultural commodity for valuable consideration

### III. THE H-2B PROGRAM AND PLAINTIFFS' WORKING ARRANGEMENTS

21. An employer anticipating a shortage of workers to perform seasonal or temporary jobs may import aliens to perform these activities if the United States Department of Labor ("USDOL") certifies that two conditions are met: (1) there are not enough U.S. workers ready and available to perform the jobs and (2) the hiring of alien workers will not

adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. §§1101(a) (15) (H) (ii)(b) and 20 C.F.R. §655.1(a). This process for admitting foreign workers is commonly referred to as the "H-2B program," and is implemented by USDOL regulations.

22. As the first step in obtaining permission to import H-2B workers, using ETA Form 9141, an employer must file an application for a prevailing wage determination with the USDOL, which will make a prevailing wage determination and return the endorsed determination to the employer. 20 C.F.R. §655.10(a).

23. In addition to obtaining a prevailing wage determination, prior to filing an Application for Temporary Employment Certification, an employer must submit a "job order" to the State Workforce Agency serving the area of intended employment and attempt to recruit U.S. workers through advertising. 20 C.F.R. §655.15(e).

24. Using ETA Form 9142, an employer must then file an Application for Temporary Employment Certification with the USDOL. 20 C.F.R. §655.20(a). The application includes an attestation that the employer will abide by certain conditions relating to wages, compliance with employment-related laws and regulations, availability of full-time employment, worksite placement, and transportation, among others. 20 C.F.R. §655.22. The ETA Form 9142 also contains a certification by the employer that "[t]he offered terms and working conditions…are not less than the minimum terms and conditions required by Federal regulation at 20 CFR 655, Subpart A."

25. The federal regulations at 20 C.F.R. §655, Part A require, *inter alia*, that all workers be paid at least the applicable prevailing wage and that the employment offered will comply with all Federal and State employment-related laws. 20 C.F.R. §§655.22(d) and (e).

## STATEMENT OF FACTS

26. In late 2012, Defendant Stone Forestry submitted an Application for Temporary Employment Certification on ETA Form 9142, seeking admission of H-2B workers for reforestation activities at locations in South Carolina, Georgia, Kentucky, West Virginia, Alabama, and Florida.

27. The Application for Temporary Labor Certification submitted by Defendant Stone Forestry as described in Paragraph 26 offered a prevailing wage between $9.91 and $19.30 per hour, depending on the location of the work. The Application also contained an assurance by Stone Forestry that the employment would comply with all applicable Federal and State employment-related laws.

28. The USDOL eventually granted Stone Forestry's application and certified the need for H-2B workers.

29. Plaintiffs Jose Luis Morales-Perez and Angel de Jesus Lopez Russell, were recruited in Mexico by Defendants' agent for reforestation employment pursuant to the H-2B certification issued to Stone Forestry as described in Paragraphs 26 through 28. Plaintiffs paid Defendants' agent the sum of 500 Mexican pesos each (approximately $34 USD) as a recruitment or hiring fee.

30. At the time of his recruitment by Defendants' agent, as described in Paragraph 29, Plaintiffs were told that their transportation and housing would be paid for by Defendants.

31. Based on the representations of Defendants' agent as described in Paragraph 30, Plaintiffs accepted Defendants' job offer and traveled at their own expense from their

7

homes to Monterrey, Nuevo Leon, Mexico, where they were interviewed for H-2B visas at the United States Consulate in that city.

32. In Monterrey, Plaintiffs paid several fees relating to their application to work for Defendants as H-2B workers. They paid a visa application fee of approximately $200 each. In addition, Plaintiffs paid Defendants' representatives 1800 Mexican pesos each (approximately $120 USD) for bus transportation from Monterrey to Defendants' worksite in the United States.

33. Following their interviews and the subsequent issuance to them of H-2B visas to work for Defendants, Plaintiffs traveled from Monterrey to Defendants' jobsite in South Carolina. At the U.S./Mexico border, Plaintiffs paid U.S. immigration officials a fee of $6.00 each for issuance of an arrival/departure document, commonly known as Form I-94.

34. The terms and conditions of Defendants' job order and the corresponding temporary employment certification application, together with the conditions listed at 20 C.F.R. § 655.20, constituted a "working arrangement" between Plaintiffs and Defendants, within the meaning of the AWPA, 29 U.S.C. § 1822(c).

35. Upon arrival at Defendants' jobsite, Plaintiffs met with Defendant Campos, who assigned them to a work crew. Campos charged Plaintiffs $375.00 each and required Plaintiffs to endorse a check, the purpose of which is unknown to Plaintiffs.

36. Following their arrival at Defendants' jobsite in or about December, 2012, Plaintiffs were employed by Defendants at reforestation tasks in South Carolina and other states.

37. Defendants failed to reimburse Plaintiffs during their first week of employment for the expenses they incurred applying for H-2B visas, traveling from their home towns to

8

Monterrey and from Monterrey to Defendants' jobsite, and acquiring Form I-94 at the U.S./Mexico border. As a result, Plaintiffs' earnings during their initial week of employment with Defendants' were less than $7.25 per hour.

38. During their employment with Defendants, Plaintiffs traveled from place to place, performing reforestation tasks at each stop. During this period, Plaintiffs were housed in motel or other units that were controlled and provided by Defendants. These units lacked beds for each worker, forcing Plaintiffs to share a bed with as many as three other employees. These accommodations also lacked cooking and refrigeration facilities for preparation and storage of food.

39. Even though they had been promised free housing by Defendants' agent at the time of recruitment, Defendants charged each Plaintiff $60 to $70 per week for lodging.

40. Plaintiffs were paid on a piece-rate basis for their work with Defendants. These piece-rate earnings almost always totaled less than the applicable prevailing wage. During most workweeks, Plaintiffs' piece-rate earnings totaled less than the federal minimum wage of $7.25 per hour.

41. As a result of Defendants' breach of their working arrangement with them, the Plaintiffs were forced to leave their employment with Defendants.

## COUNT I

**(Migrant and Seasonal Agricultural Worker Protection Act)**

42. In violation of the AWPA, 29 U.S.C. §1822(c), Defendants violated without justification their working arrangement with Plaintiffs, the terms of which were set out in Stone Forestry's job offer. Among other things, Defendants failed to provide Plaintiffs with

free lodging and failed to pay Plaintiffs wages equal to or exceeding the applicable prevailing wage.

43. In violation of the AWPA, 29 U.S.C. §1822(a), Defendants failed to pay Plaintiffs their wages promptly when due. Defendants paid Plaintiffs only their piece-rate earnings, which were less than the Fair Labor Standards Act minimum wage and the applicable prevailing wage.

44. In violation of the AWPA, 29 U.S.C. §1823(a), Defendants controlled Plaintiffs' accommodations at the various motels and failed to ensure that these facilities met applicable safety and health standards.

45. The violations of the AWPA set forth in this Count were the natural result of the conscious and deliberate actions of Defendants. These violations occurred as part of Defendants' ordinary business practices. These violations were intentional within the meaning of the AWPA.

46. As a result of the violations of the AWPA set out in this Count, Plaintiffs have suffered damages.

## COUNT II

### (Fair Labor Standards Act)

47. Defendants failed to pay Plaintiffs at least $7.25 for each hour during every workweek they were employed.

48. Defendants failed to pay Plaintiffs at one and one-half times their regular rate for those hours they worked in excess of 40 in any workweek.

49. The violations of the FLSA set out in Paragraph 47 resulted, in part, from Defendants' failure to fully reimburse recruitment fee, visa, travel and documentation expenses which

Plaintiffs incurred primarily for the benefit or convenience of Defendants prior to the Plaintiffs' first week of work. When these expenses were subtracted from the Plaintiffs' first week's pay, as required by law, the Plaintiffs' earnings were near or below zero, and felt well below the required average minimum hourly wage for that pay.

50. The violations of the FLSA set out in Paragraph 47 also resulted, in part, from Defendants' practice of requiring the immediate return, from Plaintiffs' weekly pay, of a sum of money for housing that was substandard and uninspected, in violation of 29 C.F.R. § 531.31, or at a profit to Defendants' or Defendants' agent, in violation of 29 C.F.R. § 531.3(b).

51. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid minimum and overtime wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and for which they were paid less than the applicable minimum wage or overtime wage.

## COUNT III

### (South Carolina Payment of Wages Act

52. In violation of S.C. Code Ann. § 41-10-40 (1976 & Supp. 2009), Defendants failed to pay Plaintiffs all wages due at the designated time and place, as further described in Paragraphs 48 and 49.

53. In violation of S.C. Code Ann. § 41-10-50 (1976 & Supp. 2009), Defendants failed to pay Plaintiffs all wages due within forty-eight hours or on the next regular payday. Defendants failed to pay Plaintiff the applicable prevailing wage. Defendants failed to

pay Plaintiff wages as required under the Fair Labor Standards Act, as set out in Count II.

54. As a result of Defendants' violations of South Carolina law as set out in this count, Plaintiffs suffered damages.

## COUNT IV

### (Breach of Contract)

55. As a result of Defendants' actions, Plaintiffs suffered damages.

56. Defendants entered into an employment contract with Plaintiffs when it offered and the Plaintiffs accepted employment and traveled to Defendant Stone Forestry's jobsite in South Carolina.

57. Defendants breached the employment contract with the Plaintiffs by failing to provide rent-free housing.

58. Defendants breached the employment contract by failing to pay Plaintiffs the prevailing wage for his labor.

59. As a result of Defendants' contractual breaches, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

Plaintiffs demand a jury for all issues so triable.

**WHEREFORE**, Plaintiffs respectfully requests this Court enter an order:

a. Entering judgment in favor of Plaintiffs on their AWPA claims as set out in Count I and awarding them either their actual damages or $500 in statutory damages each, whichever is greater, for each violation of the AWPA;

b.  Entering judgment in favor of Plaintiffs on their FLSA claims as set out in Count II and awarding them their unpaid minimum and overtime wages and an equal amount as liquidated damages;

c.  Entering judgment in favor of Plaintiffs on their claims under the South Carolina Payment of Wages Law as set out in Count III and awarding them treble damages for each violation of S.C. Code § 41-10-40 & -50 (2006), pursuant to S.C. Code § 41-10-80(C) (1976 & Supp. 2009);

d.  Entering judgment in favor of Plaintiffs on their breach of contract claim as set out in Count IV and awarding them actual and compensatory damages for each contractual breach;

e.  Awarding Plaintiffs pre- and post-judgment interest as allowed by law, court costs, and reasonable attorneys' fees; and

f.  Granting such other and further relief as the Court deems just and proper.

This 22nd day of April, 2015.

Respectfully submitted,

/s/ Shaundra F. Young_____
Shaundra F. Young
Federal Bar No. 10432
South Carolina Legal Services
2803 Carner Ave.
N. Charleston, SC  29405
Tel. (843) 266-2168
Fax. (843) 760-1090
shaundrayoung@sclegal.org

## **CERTIFICATE OF SERVICE**

This is to certify that today the foregoing **Amended Complaint** was electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including:

Paul H. Derrick at pderrick@cshlaw.com

This 22nd day of April, 2015.

/s/ Shaundra F. Young_____
Shaundra F. Young